### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF NEW MEXICO

SONYA ABEYTA, EX REL. HER
DECEASED MOTHER, DIANE ABEYTA,

      Plaintiff,

v.                                                                                                     CIV 20-0235 KG/KBM

ANDREW SAUL,
Commissioner of Social
Security Administration,

      Defendant.

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (Doc. 23) filed on September 30, 2020. Having carefully reviewed the parties' positions and the material portions of the record, the Court recommends that Plaintiff's motion be GRANTED in part.[1]

**I.  Procedural History**

Ms. Diane Abeyta filed an application with the Social Security Administration for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act (SSA), and for Supplemental Security Income (SSI) under Title XVI of the SSA on April 23, 2014. Administrative Record[2] (AR) at 241-53. Ms. Abeyta alleged a

---

[1] Judge Gonzales entered an Order of Reference Relating to Social Security Appeals on January 21, 2021, referring this case to the undersigned Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." *Doc. 33*.

[2] Document 17-1 contains the sealed Administrative Record. *See Doc. 17-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

disability onset date of February 15, 2013. AR at 241, 248. Disability Determination Services (DDS) determined that Ms. Abeyta was not disabled both initially (AR at 76-99) and on reconsideration (AR at 100-27). Ms. Abeyta requested a hearing with an Administrative Law Judge (ALJ) on the merits of her applications. AR at 174-75.

Both Ms. Abeyta and a vocational expert (VE) testified during the *de novo* hearing. *See* AR at 43-72. Ms. Abeyta died on August 17, 2017. AR at 834. On October 3, 2017, her daughter, Ms. Sonya Abeyta (Plaintiff), was substituted as a party on behalf of her mother. AR at 227-28. ALJ Lillian Richter issued a partially favorable decision on December 17, 2017, finding that Ms. Abeyta "was not disabled prior to May 23, 2017, . . . but became disabled on that date and has continued to be disabled through the date of her death." AR at 149; *see also* AR at 128-55. Ms. Abeyta submitted a Request for Review of Hearing Decision/Order to the Appeals Council (AR at 229), which the Council granted on January 16, 2020 (AR at 4-32).[3] On January 16, 2020, the Appeals Council issued a decision that expanded the period during which ALJ Richter found Ms. Abeyta was disabled, finding she became disabled on November 21, 2016. AR at 4-32. Consequently, the Appeals Council's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

## II.   Applicable Law and the ALJ's Findings

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has

---

[3] Plaintiff first filed a complaint in this Court on September 27, 2019, which the court dismissed without prejudice due to lack of jurisdiction. *See Abeyta v. Social Sec. Admin.*, 19-cv-00909-JHR, Order Gr. Def.'s Unopposed Mot. to Dismiss without Prejudice (D.N.M. Dec. 17, 2019).

lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a sequential five-step evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) her impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), she is unable to perform her past relevant work. 20 C.F.R §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of her medical impairments." *Ryan v. Colvin*, Civ. 15-0740 KBM, 2016 WL 8230660, at *2 (D.N.M. Sept. 29, 2016) (citing 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); 20 C.F.R. § 404.1545(a)(1)). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v. Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

After considering the record and analyzing Ms. Abeyta's RFC, ALJ Richter concluded that Ms. Abeyta "was not disabled prior to May 23, 2017, but became disabled on that date and has continued to be disabled through the date of her death." AR at 149 (citing 20 C.F.R. §§ 404.1520(f), 416.920(f)). Plaintiff requested review of the ALJ's decision (AR at 229), and the Appeals Council granted the request (AR at 236-40). The Appeals Council initially reviewed the ALJ's decision, found new evidence that changed the outcome, and determined that Ms. Abeyta "met the definition of 'disabled' under the Act on November 21, 2016 . . . ." AR at 230-31. Plaintiff then filed an additional objection on the basis that ALJ Richter was "not properly appointed under the Constitution's Appointments Clause at the time of the hearing and thus did not have legal authority to preside over this case or to issue an unfavorable decision." AR at 351 (citing *Lucia v. SEC*, 138 S. Ct. 2044 (2018)) (subsequent citation omitted). The Appeals Council again granted Plaintiff's request for review, vacated ALJ Richter's decision, and two Administrative Appeals Judges reviewed the file. *See* AR at 236–37; *see also* AR at 8-9. On January 16, 2020, the Appeals Council issued a new, independent decision. AR at 4-32.

At Step One of the process,[4] the Appeals Council found that Ms. Abeyta "did not engage in substantial gainful activity from the alleged onset date of February 15, 2013, through the date of her death." AR at 11 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the Appeals Council concluded: "[s]ince the alleged onset date of disability, [Ms. Abeyta] ha[d] the following severe impairment(s): degenerative disc

---

[4] The Appeals Council first found that Ms. Abeyta "met the special earnings requirements under Title II of the Act . . . through June 30, 2019." AR at 11.

4

disease of the lumbar spine, hypothyroidism, insomnia, chronic foot pain, and colorectal cancer." AR at 11. The Appeals Council noted that Ms. Abeyta "was treated or evaluated for other symptoms and complaints throughout the record[,]" but the "impairments were non-severe under the requirements of 20 [C.F.R.§§] 404.1520(c) and 416.920(c)." AR at 12. Regardless, the Appeals Council considered all of the impairments (severe and non-severe) in determining Ms. Abeyta's RFC. AR at 11, 15.

At Step Three, the Appeals Council found that prior to November 21, 2016, Ms. Abeyta "did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 14-15 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). At Step Four, the Appeals Council found that prior to November 21, 2016, Ms. Abeyta

> had the [RFC] to perform a limited range of light work as defined in 20 [C.F.R. §§] 404.1567(b) and 416.976(b), except as follows: [she] could frequently climb ramps and stairs, but could never climb ladders, ropes or scaffolds. [She] could occasionally balance, stoop, kneel, crouch and crawl. [She] should avoid exposure to unprotected heights and hazardous machinery. [She] could frequently reach overhead bilaterally.

AR at 16. The Appeals Council found that prior to November 21, 2016, Ms. Abeyta "was capable of performing past relevant work as a waitress." AR at 23 (citing 20 C.F.R. §§ 404.1565, 416.965).

The Appeals Council determined that "[b]eginning November 21, 2016, [Ms. Abeyta's] impairment of colorectal cancer met the severity of Listing 13.188C in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 24 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). Thus, the Appeals Council

5

determined that Ms. Abeyta "became disabled on November 21, 2016, and continued to be disabled through August 17, 2017, the date of her death." AR at 25.

### III.    Legal Standard

The Court must "review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200).

**IV.     Discussion**

Plaintiff argues that the Appeals Council erred in rejecting the opinions of Ms. Abeyta's treating physician, Charles Maestas, M.D. *See Doc. 23* at 1. She also argues that the RFC is unsupported by substantial evidence because the Appeals Council failed to account for Ms. Abeyta's subjective allegations of pain. *Id.*

**A.      The Appeals Council erred in rejecting Dr. Maestas's 2017 opinions.**

**1.      The "treating physician rule"[5]**

"The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the 'treating physician rule.'" *Padilla v. Colvin*, No. CV 14-495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)). "A treating physician's opinion is accorded controlling weight because the treating physician has a 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003)).

If an ALJ decides that a treating physician's opinion is entitled to less than controlling weight, the ALJ must follow two steps. *See id.* at *5. "First, the ALJ must find the opinion to be unsupported by medical evidence or inconsistent with substantial evidence in the record." *Id.* If the opinion is not well-supported by the medical evidence

---

[5] Because Ms. Abeyta filed her claims before March 27, 2017, the regulations found in 20 C.F.R. §§ 404.1527 and 416.927 apply.

or if it is "inconsistent with other substantial evidence in the record[,]" the ALJ will not give the opinion controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). At the second step of the analysis of a treating physician's opinion, the ALJ "must determine what deference he will accord the opinion after considering the six deference factors listed" in 20 C.F.R. §§ 404.1527 and 416.927. *Padilla*, 2015 WL 10383109, at *4; *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Padilla*, 2015 WL 10383109, at *4 (quoting *Watkins*, 350 F.3d at 1300). "When evaluating any medical opinion in the record, the ALJ must give good reasons—reasons that are 'sufficiently specific to make clear to any subsequent reviewers'—for the weight that he ultimately assigns to" those opinions. *Id.* (quoting *Langley*, 373 F.3d at 1119). The ALJ's "determination, like all of his findings, must be supported by substantial evidence." *Id.*

### 2.     The Appeals Council's evaluation of Dr. Maestas's opinions

The record contains three opinions from Dr. Maestas: an October 23, 2014 letter (AR at 430), a March 22, 2017 letter (AR at 428), and a March 22, 2017 Medical Assessment of Ability to do Work-Related Activities (Physical) and (Non-Physical) (AR

at 425-26). In this case, the Appeals Council did not specify whether it was giving Dr. Maestas's opinions controlling weight at the first step of the analysis. *See* AR at 22. Yet, the undersigned infers it did not from the fact that the Appeals Council gave the 2014 letter "little weight" and opted not to specifically address the 2017 "opinions as they were rendered after the established onset date." AR at 22-23; *see Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) (finding remand was unnecessary where the ALJ "implicitly declined to give" a treating physician's opinion controlling weight).

The 2014 Letter

At the second step, the Appeals Council found that Dr. Maestas's 2014 letter was "of little probative value in formulating [an RFC] because": (1) "it is conclusory and provides nominal analysis"; (2) it "is not fully consistent with other evidence of record, including the consultative examination report of Dr. Ward"; (3) it is "not fully consistent with [Ms. Abeyta's] reported activities of daily living, which included caring for sever[al] minor children and doing household cooking, laundry, cleaning, etc."; and (4) the opinion states that Ms. Abeyta "has significant disability" and is unable "to work in any type of gainful employment[,]" which is a finding reserved to the Commissioner. AR at 22.

The undersigned finds that with respect to Dr. Maestas's 2014 letter, the Appeals Council adequately considered the six deference factors at the second step of the analysis. Regarding the first, second, and fifth factors, the Appeals Council acknowledged that Dr. Maestas of Pojoaque Family Practice treated Ms. Abeyta from 2014-2017 "for chronic insomnia, chronic back pain related to degenerative disc disease

of the spine, hypothyroidism[,] and prior hand and foot injuries with ongoing pain." *See* AR at 17, 22.

With respect to the third factor, the Appeals Council found that Dr. Maestas's opinion was conclusory with nominal analysis. AR at 22. In summarizing Dr. Maestas's treatment notes, the Appeals Council noted that physical examinations were frequently "perfunctory or routinely deferred . . . with few, if any, objective positive clinical signs or findings." AR at 19 (citing AR at 398-418, 433-44, 484-520). It also observed that Dr. Maestas never recommended activity restrictions or limitations. AR at 17, 19 (citing, *e.g.*, AR at 402-03). Plaintiff does not dispute any of these reasons for discounting the 2014 opinion. *See Doc. 23* at 13-14. Instead, she asserts that in its analysis of the 2014 letter, the Appeals Council *also* analyzed the 2017 letter. *See id.* at 14 ("the [Appeals Council] discussed both letters submitted by Dr. Maestas"). The Court disagrees with Plaintiff's interpretation of the Appeals Council's analysis.

It is true that the Appeals Council mentions both the 2014 and 2017 letters in the first sentence of its analysis. AR at 22. It follows this sentence with a citation to the 2014 letter, but it does not cite the 2017 letter. AR at 22 (citing AR at 429-30). The Appeals Council then evaluates language specific to Dr. Maestas's 2014 letter, but it does not consider the much more detailed 2017 letter, which references record evidence regarding Ms. Abeyta's impairments. AR at 22; *see also* AR at 428, 430. The Court disagrees with Plaintiff's contention that the Appeals Council "considered, and then effectively rejected," the 2017 letter. *See Doc. 23* at 15. Given the Appeals Council's failure to either mention any of the specific information from the 2017 letter or cite to the exhibit, the Court finds the more plausible explanation is that the Appeals Council

inadvertently mentioned the 2017 letter in its analysis of the 2014 letter. This conclusion is supported by the Appeals Council's statement immediately following its analysis of the 2014 letter, in which it "note[d] that Dr. Maestas completed a Medical Assessment of Ability to Do Work-Related Activities **and a Letter of Disability on March 22, 2017**[,]" but chose "not [to] specifically address[] **these opinions** as they were rendered after the established onset date." AR at 22 (citing AR at 424-28) (emphasis added). As a result, much of Plaintiff's argument concerning the Appeals Council's analysis is inapplicable, as it is based on the 2017, rather than the 2014, letter. For example, Plaintiff argues that Dr. Maestas "added specificity" to his 2017 letter by referencing evidence and submitting the Medical Assessment of Ability to do Work-Related Activities. *See Doc. 23* at 15-16. The 2017 letter and Medical Assessment form are unrelated to the 2014 letter, and the Court finds no error in the Appeals Council's analysis of the 2014 letter on this basis.

The Appeals Council also noted that Dr. Maestas opined on findings reserved to the Commissioner; *e.g.*, that Ms. Abeyta was disabled and unable to work. AR at 22. In support, the Appeals Council noted that Dr. Maestas's treatment notes contained comments that Ms. Abeyta "had 'total and permanent disability[,]'" but the "notes do not contain any objective clinical examination findings to support this opinion." AR at 19 (citing AR at 399-401). Plaintiff contends that the Appeals Council rejected Dr. Maestas's letter on the basis that he opined on disability. *See Doc. 23* at 14. To the extent the Appeals Council discounted Dr. Maestas's opinion regarding whether Ms. Abeyta was disabled or unable to work, the Court finds no reversible error. "Under the controlling regulations, the final responsibility for deciding the ultimate issue of whether

11

a social security claimant is 'disabled' or 'unable to work' is reserved to the Commissioner." *Mayberry v. Astrue*, 461 F. App'x 705, 708 (10th Cir. 2012) (citations omitted); *see also* 20 C.F.R. §§ 404.1527(d)(1) and 416.927(d)(1). Accordingly, the Appeals Council "is not bound by a treating physician's opinion on the ultimate issue of disability, and such an opinion is never entitled to controlling weight or special significance." *Mayberry*, 461 F. App'x at 708 (citing SSR 96-5p, 1996 WL 374183, at *1, *2, *5 (July 2, 1996)). More importantly, the Appeals Council did not reject the opinion solely on this basis; it was one of several reasons discussed. *See* AR at 22.

With respect to the fourth factor, the Appeals Council found that Dr. Maestas's 2014 letter was "not fully consistent with the other evidence of record, including the consultative examination report of Dr. Ward, which revealed that [Ms. Abeyta] had full 5/5 strength in all extremities with generally normal range of motion and no atrophy." AR at 22 (citing AR 393-97). Plaintiff underwent a consultative physical examination with Em Ward, M.D., on November 25, 2014. *See* AR at 393-97. "Although Dr. Ward did not provide a function-by-function assessment of [Ms. Abeyta's] physical capabilities[,] the Appeals Council afford[ed] significant weight to Dr. Ward's report and the objective examination findings indicating that [Ms. Abeyta] had a normal gait, full range of motion, normal strength, and minimal treatment for her back impairment . . . ." AR at 22 (citing AR at 393-97). The Appeals Council found that Dr. Ward's examination findings were "highly consistent with the other evidence of record" and that "Dr. Ward is a medical expert who is familiar with the requirements and evaluation protocols of the disability process." AR at 22.

12

While Plaintiff does not question the Appeals Council's analysis of Dr. Ward's opinion, she does point out that Dr. Ward "indicated vaguely that he did 'not have a good sense of degree of impairment' related to Ms. Abeyta's nonspecific, generalized back pain" and that "Dr. Ward did not opine on any non-physical limitations . . . ." *Doc. 23* at 16 (quoting AR at 396). The Court finds no error related to these complaints. First, while Dr. Ward did "not have a good sense of [the] degree of [Ms. Abeyta's back] impairment" (AR at 396), this does not conflict with Dr. Maestas's 2014 letter, which merely identified "chronic back pain related to degenerative disease of the spine" (AR at 430). Moreover, the Appeals Council recognized that Dr. Ward did not opine any physical function-by-function assessments. Second, the fact that Dr. Ward did not opine on non-physical limitations makes no difference, as Dr. Maestas's 2014 letter was also largely free of such an opinion. Dr. Maestas did note that Ms. Abeyta suffered from chronic insomnia and ongoing pain, but he did not provide a related function-by-function assessment either. *See* AR at 430. Thus, the Court finds no reversible error on this basis.

In sum, the undersigned finds no reversible error in the Appeals Council's analysis of Dr. Maestas's 2014 letter and recommends denial of Plaintiff's motion on this basis.

The 2017 Letter and Medical Assessment

With respect to Dr. Maestas's March 2017 letter and Medical Assessment, the Appeals Council declined to "specifically address[] these opinions as they were rendered after the established onset date." AR at 22-23. The Appeals Council ultimately found that Ms. Abeyta became disabled on November 21, 2016. AR at 24. Plaintiff

13

argues that the Appeals Council erred in refusing to consider the Medical Assessment, as the form directed Dr. Maestas to "consider the patient's medical history and the chronicity of findings as from one year prior to initial visit to current examination." AR at 426. The Commissioner fails to respond to this point. *See Doc. 24*. The undersigned agrees with Plaintiff.

Dr. Maestas began treating Ms. Abeyta in 2014. *See* AR at 430. Thus, as the form asked him to consider Ms. Abeyta's history and findings from a time *one year prior* to her initial visit with him, Dr. Maestas necessarily considered her medical history since 2013, a time that pre-dated her established onset date. That the Medical Assessment was "rendered after the established onset date" then (AR at 22), makes no difference— it was relevant to the time period preceding the disability onset date. Because the Appeals Council was required to consider *all* medical opinions, its failure to consider Dr. Maestas's 2017 opinion, which was relevant to the period under consideration, is error. *See Doyal*, 331 F.3d at 764; 20 C.F.R. §§ 404.1527(c), 416.927(c).

Had the Appeals Council weighed the 2017 Medical Assessment form as supplemented by the 2017 letter, it may have included more restrictions in the RFC. Plaintiff notes, for example, that Dr. Maestas opined that Ms. Abeyta had marked limitations in her abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, maintain physical effort for long periods without a need to decrease activity/pace or rest, work in coordination with/or proximity to others without distraction, and complete a normal workday/workweek without interruptions from pain or fatigue based symptoms. *See Doc. 23* at 16-17; AR at 426. Dr. Maestas noted that these non-physical limitations were

due to "conditions [that] produce chronic pain, sleep disturbance, and need for opiate and benzodiazepine medications." AR at 426. As Plaintiff points out, "the [Appeals Council] did not include any mental limitations in its assessment of Ms. Abeyta's RFC whatsoever." *Doc. 23* at 17 (citing AR at 16). Had the Appeals Council properly weighed the 2017 opinions, it may have included mental limitations in the RFC that would have affected the ultimately disability determination.

Without citing to specific record evidence, the Commissioner summarily argues that substantial evidence supports the Appeals Council's findings at Step Three, which "directly undermine[s] Dr. Maestas's opinions about mental limitations." *Doc. 24* at 11-12. At Step Three, the Appeals Council considered whether Ms. Abeyta's mental impairments met the "paragraph B" criteria. AR at 12-14. The Appeals Council found that Ms. Abeyta had no more than mild restrictions in each of the four "broad areas of functioning": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing themselves. AR at 13. The Appeals Council examined Ms. Abeyta's activities of daily living and noted that she "verbalized understanding of her treating providers' instructions[,]" "interacted well with others[,]" "remained focused and engaged" during the hearing and "testified cohesively," could follow a recipe and drive, and cared for grandchildren. AR at 13-14 (citations omitted).

Noticeably absent from this analysis, however, is any reference to records from Dr. Maestas or Dr. Davies, whose records were replete with evidence related to Ms. Abeyta's mental limitations. Dr. Maestas's records consistently demonstrate Ms. Abeyta's complaints of chronic pain, insomnia/sleep disturbance, fatigue, malaise,

15

anxiety, and depression, as well as the opiate and benzodiazepine medications used to control her pain and anxiety. *See, e.g.*, AR at 398 (Mar. 21, 2015), 399 (Apr. 23, 2015 & June 22, 2015), 400 (Feb. 23, 2015), 401 (Oct. 23, 2014), 436 (Apr. 22, 2016 & June 23, 2016). Ms. Abeyta saw Dr. Davies for counseling from July 2015 through April 2017 for treatment of anxiety and depression. *See* AR at 432, 445-83. Dr. Davies completed a Medical Assessment of Ability to Do Work-Related Activities (Mental), which directed her to "consider the patient's medical history and the chronicity of findings as from a year prior to initial visit to current examination." AR at 420. Several of Dr. Davies's opined limitations support Dr. Maestas's opined limitations. *Compare* AR at 420, *with* AR at 426. Again, although the form instructed Dr. Davies to consider the period before the established onset date, the Appeals Council declined to consider it on the basis that "it was rendered after the established onset date." AR at 23.

Dr. Ward, whose findings the Appeals Council afforded significant weight, did not opine on Ms. Abeyta's mental limitations. *See* AR at 22, 393-97; *Doc. 23* at 16. The Court also observes that "the State agency nonexamining psychological consultants who assessed Ms. Abeyta's mental impairments, and to whom the Appeals Council gave "significant" (initial) and "great" (reconsideration) weight and relied on "to support [its] RFC and finding of nondisability" before November 21, 2016 (AR 21), "did not prepare mental residual functional capacity assessments." *See Jaramillo v. Berryhill*, No. CV 15-920 KK, 2017 WL 3608237, at *9 (D.N.M. Feb. 27, 2017); *see also* AR at 78-127.

In short, the undersigned is unconvinced that substantial evidence supports the Appeals Council's RFC regarding Ms. Abeyta's mental limitations, contrary to the

16

Commissioner's view. More importantly, the undersigned does not find that the Appeals Council's conclusions about Ms. Abeyta's non-physical limitations overcome its error in failing to analyze Dr. Maestas's 2017 opinions, which were relevant to the period before the established onset date. The undersigned recommends that the Court grant Plaintiff's motion to remand on this basis and instruct the ALJ, on remand, to consider Dr. Maestas's and Dr. Davies's 2017 opinions.

### B. On remand, the ALJ should consider Ms. Abeyta's subjective allegations of pain and other subjective symptoms.

Plaintiff next contends that "the [Appeals Council] did not fully credit Ms. Abeyta's statements as to her chronic pain." *Doc. 23* at 17. The undersigned will not reach this issue, as it may be affected by treatment on remand. However, the undersigned recommends that the Court direct the ALJ to thoroughly consider Ms. Abeyta's subjective allegations of pain and other symptoms on remand.

### C. The undersigned recommends remand for further consideration of the DIB claim.

Plaintiff asks the Court to direct an immediate payment of benefits. *Doc. 23* at 20. "Whether or not to award benefits is a matter of our discretion." *Winick v. Colvin*, 674 F. App'x 816, 823 (10th Cir. 2017) (quoting *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006)). "In exercising this discretion, [courts] consider such factors as 'the length of time the matter has been pending' and 'whether or not given the available evidence, remand for additional fact-finding would serve any useful purpose but would merely delay the receipt of benefits.'" *Id.* (quoting *Salazar*, 468 F.3d at 626).

Plaintiff urges the Court to direct an immediate award of benefits because it is a closed period and because the case has been pending since her 2014 applications.

*Doc. 23* at 21. The Commissioner asks that in the event the Court finds reversible error occurred, the case be remanded for further consideration. *Doc. 24* at 15. The undersigned recommends remanding for further consideration.

In *Winick*, the Tenth Circuit noted that although the matter had been pending for almost ten years and had undergone "numerous remands for further agency decision-making[,] . . . an eventual award of benefits [was] not foreordained on [the] record . . . ." 674 F. App'x at 823. It found that "further administrative proceedings [were] appropriate to permit the Commissioner to properly weigh the evidence." *Id.* The same is true here. While this is the second time Ms. Abeyta's claims have been appealed to this Court (the first dismissed for lack of jurisdiction (AR at 36)), the outcome of her claim is not so clear from the record that an immediate award of benefits is proper.

Finally, the Commissioner avers that while Ms. Abeyta's daughter may be "eligible to receive an underpayment created by a posthumous DIB award[,]" (*Doc. 24* at 5 (citing 42 U.S.C. § 404(d); 20 C.F.R. § 404.503(b))), only a surviving spouse may receive SSI benefits due to the estate of an adult claimant. *See id.* (citing 42 U.S.C. § 1383(b)(1)(A); 20 C.F.R. § 416.542(b)(1)(4)). Plaintiff does not reply to this contention. The Court agrees that Plaintiff is only eligible to recover a DIB award. *See, e.g.*, Mares *ex rel. Mares v. Berryhill*, No. 1:17-CV-00529-KRS, 2018 WL 1721751, at *1 (D.N.M. Apr. 9, 2018) (noting that because "only a surviving spouse may record SSI benefits" pursuant to § 1383(b)(1)(A)(i), the plaintiff "concede[d] that the SSI claim was extinguished").

### V.      Conclusion and Recommendation

I recommend the Court find that the Appeals Council committed reversible error in failing to analyze Dr. Maestas's 2017 opinions. I further recommend that the Court find that further analysis would be helpful in determining Ms. Abeyta's onset date of disability. The Court should instruct the ALJ on remand to analyze Dr. Maestas's and Dr. Davies's 2017 opinions and thoroughly consider Ms. Abeyta's description of her symptoms and pain with respect to the DIB claim only.

**IT IS HEREBY RECOMMENDED** that the Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 23*) be granted in part.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.   If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE